Number 1520618 Mahmood vs. DeMoss Owners Association. Number 1520618 Mahmood vs. DeMoss Owners Association. Mr. Jacob. Good morning. May it please the Court. Yes, sir. I'm Henry Jacob, representing the appellants, the plaintiffs in the District Court, Valerie Jackson and Ashraf Mahmood. I'm going to restrict my argument this morning to just address the four questions that the Court asked for additional briefing on. If the Court wants any other matters addressed, I'll wait for questions on that. Thank you. The first question that the Court asked for additional briefing on was with respect to the Kaltenbach vs. Richards case and what impact that case has on this case. I begin by looking at just the general purpose of the FDCPA. And the FDCPA applies to debt collectors as defined under 15 U.S.C. 1692A6, the general definition we're all familiar with. But there is a provision under that section that expands the definition a little bit for persons who don't otherwise qualify as debt collectors but nevertheless engage in the enforcement of security interests. So even if you are not otherwise a debt collector, you're a debt collector for the purposes of 1692F6, if you're in the business of enforcing security interests. And that's all that that provision does. And they don't disagree with that. I mean, they didn't cite it in their brief, which was odd, the original brief, but they didn't disagree with that. And that's why their notice of pending foreclosure, it seems to me, appears to try to touch all the bases. Well, I agree, Your Honor. They nevertheless argue that the enforcement of security interests is not debt collection, and therefore their communications are not governed by any of the other provisions under the FDCPA other than 1692F6. They don't dispute, no one disputes, that they satisfy, that the attorney defendants satisfy the general definition for a debt collector under 1692A6. And, of course, under Kaltenbach, because they are, they satisfy the definition of debt collectors, then they are debt collectors even when enforcing security interests. The argument that they make, they try to narrowly focus on just the actual action of foreclosure and to draw from that the conclusion that they're not subject to the rest of the FDCPA requirements. In fact, this Court, and the reason is that this Court and other courts have held that enforcement of security interests is not debt collection. We don't dispute that. But that's not what's going on in this case. If you look at the very first letter that was transmitted by the attorney defendants, dated October 8, 2012, the very first letter, their very first communication with the debtors, the very first sentence in their letter, the undersigned has been retained by the captioned association to collect the captioned amounts due by you to the association. So they've been retained for the purpose of debt collection on behalf of a third party, the original creditor. In the second paragraph, they say, Demand is hereby made that you pay the total amount of all such amounts. All right. These are hallmarks of debt collection. This is not just enforcement of a security interest. These are hallmarks of debt collection. So it's very difficult to understand how — Did they also send a notice of acceleration for impending foreclosure under Texas law? I mean, that's that same demand because the only thing they didn't add was acceleration, but acceleration is not a principle that applies to condo debts as I understand it. Acceleration does not. Correct your honor, not in this case. It's not that kind of a debt. But you can break down the pieces, the various pieces of the process of foreclosure into constituent parts. It begins with a demand for payment notice of default that contains enough information to give the borrower or the debtor an opportunity to cure, and then notice of intent to foreclose, and then later on, within the statutory period of a number of days, the notice of sale. All right. So each of those pieces can be separated, and there are parties who simply focus on that last piece that give the notice of foreclosure, the notice of sale. And so in that case, they're not debt collecting, if that's all they're doing. I'm sorry, your honor. They'll exercise their contractual right. I'm sorry, your honor. So in that hypothetical, it isn't seeking to collect a debt. Exactly. I guess with sort of reference to the Ninth Circuit case that they're heavily relying on, if you did do a nonjudicial foreclosure in Texas and there's some deficiency still left over, can you invoke the Texas legal process to obtain that deficiency? Yes, and it would involve a lawsuit at that point. If there's a deficiency that results from the foreclosure, then you file a lawsuit to collect that deficiency. So it's a post-foreclosure step. Is it necessary for you to be able to say in this October 8th letter that it is threatening litigation in addition to threatening to collect the debt? No. That's not required? It's not required under Texas law to give that notice in this first letter. Right, but under the FDCPA? I'm not sure I understand the question. It's not necessary to discuss those post-foreclosure issues. Let's see if we can narrow down what you're, you know, to save time and maybe help you out in the discussion. The gist of your argument is they're fully covered by the FDCPA irrespective of the exclusion for nonjudicial foreclosures. But then you have to show a violation of the FDCPA, and as I understand it, you have two of them. One of them is the defective notice on 30, well, you have several violations that you claim, but one of them has to do with the 30-day notice. Another one has to do with allegedly collecting on time-barred debt, right? Yes. Yes, Your Honor. And then there's some other ones about? Right. The time-barred debt issue goes into, I guess, a class of, we claim that the total amount that they demanded was overstated for several reasons. Part of it was time-barred debt. Part of it is a dispute regarding late fees, and part of it is a dispute regarding whether proper notice was given before the charge was added as a lien. Focusing on just the time-barred debt portion, just for brevity, the so they're making demands for a total amount. They specifically say demand is hereby made for the total amount of all such amounts. And they go on to say if you don't pay the total amount demanded, we're going to proceed with foreclosure. What's important is following this up, the debtors made payments, not just one at a time, they were sending in three checks at a time. They were trying to catch up. They knew that there was something wrong with these amounts. They could not figure out what it was. They knew there was something wrong with the amounts demanded, and so they were sending in payments hoping that these would simply satisfy the association. But these checks weren't cash, right? No. They were not accepted. The attorney defendants returned those checks with a letter that said, you haven't paid, and a very stilted wording. This constitutes imperfect tender. So they returned the amounts because the full amount, the total amount that was demanded wasn't paid, including the time-barred portion. So if they had paid the un- This involves two things. We're getting a little off track here because you're getting into what you would do at trial. But from a legal standpoint, you've got two things. Is this time-barred debt, number one, legally, is it time-barred debt? I think we had asked you to brief that. And number two, even if it is, under the circumstances here, does a threat, a notice of nonjudicial foreclosure on any time-barred debt, to say nothing of a partially time-barred debt, violate the FDCPA? And you might find the latter question a little easier to answer because the FDCPA in terms only talks to threat of litigation. Okay. Let me take those questions in order. First, the issue of whether these debts, a portion of the total amount demanded was time-barred. And the Court asked the question about what statute of limitations applies. The appellees responded that no statute of limitations applies to these debts because they are a lien created under Section 82.113C. I'm sorry, .113 of the Texas Property Code. And when they looked at the statutes, they don't find language that particularly addresses this type of a lien. We responded that this Court, under Davidson v. FDIC, found two statutes of limitations under Texas law that would apply to a nonjudicial foreclosure. One is under the Texas Civil Practice and Remedies Code, Section 16.004A sub paragraph 3, that applies to debts. So an action on a debt is time-barred four years after the action accrues. And under 16.0035, again, of the Civil Practice and Remedies Code, sub paragraph C, nonjudicial foreclosure is time-barred four years after that cause of action accrues. Now, that particular provision references mortgages and deeds of trust, the two typical instruments used to finance a home. So it doesn't use a more general term such as other contract liens. Paragraph ‑‑ I'm sorry, Section 51002 of the Texas Property Code, which the Court also mentioned in its questions to us, describes deeds of trust and other contract liens. And 51002 is the section that governs nonjudicial foreclosures, how you conduct a nonjudicial foreclosure. So it draws the equivalence, if you will, between deeds of trust and other contract liens. If we go back to Section 82113, and we look at subsection C, subsection C is a section that makes clear that the lien is not created, sui generis, as the appellees argue, but by the statute that is ‑‑ not by the statute itself, rather, and this is a quote from the statute, the association's lien for assessments is created by recordation of the declaration, which constitutes record notice and perfection of the lien. And I would point out that the declaration in this case was on file more than a decade before this statute was even ‑‑ came into existence. So, in other words, the lien is a contract lien. The lien and the power of sale come from the contract that was filed in the form of the declaration. Am I oversimplifying just factually that in the record and in your briefs, the portion that is time barred has always been stated to be approximately $541 and that that relates to the repair amount that's in dispute? Right. There were several repair amounts. But it's repair amounts that's the portion that you stated. That's right. They disputed, did they dispute below that that, the repair, which I think of as a one‑time fee, is a portion, is the portion that is time barred? I don't think so, no. But although there is a repair that's also disputed that is not time barred. There were several different repairs that one of which is not time barred, the other two are time barred. And the time barred portion of that was approximately $500. I have two questions. Do they still live in the condo? They do still live in the condo. They still have possession of the condo, physical possession of the condo. My second question is what's the relationship between Abtahi, or however you say that person's name, and Mahmoud, such that the unit was conveyed back to him for something like $10? So Mr. Abtahi was the third‑party purchaser at the foreclosure sale. He showed up at the foreclosure sale and bid on the property, and they called it a sale to Mr. Abtahi. Were they friends? Did they know one another? They did not, no. Mr. Mahmoud tracked Mr. Abtahi down and made offers to purchase the property, and eventually they reached a price. Well, this all happened within about two months of the foreclosure, didn't it? It was pretty fast. The foreclosure was in February of 2013, and Mr. Mahmoud obtained the property back from Abtahi in June, so about four or five months later. What did it cost him to get it back? Approximately $25,000, if memory serves. But he never had to vacate, though, did he? They did not have to vacate. Might have had interim rent or something. Well, there was a suit to evict, and it was actually in the context of that suit that they were able to meet each other and then negotiate the sale, the repurchase of the property. Now, the concept of never vacating the property comes up from the standpoint of there are several cases that say you can't have a wrongful foreclosure if you never have to give up possession of the property. But if you look at those cases, they're cited by the employees. I think that's probably not before us. So we're not worried about that. And you do have time for rebuttal. So we will move on to the second question. Put your red lights on. She's trying to politely tell you. Understood. That's okay. We understand you've preserved your arguments. Mr. Van Fleet? May it please the Court, while I clear my throat. I am William L. Van Fleet. I am here today representing what we call the attorney defendants and appellees. The law firm of Frank L. Moore, Lievens, Chesney, and Turrett, as well as one of its partners, Christie Slaughter. And I would like to start my argument by first addressing the Kaltenbach question. Kaltenbach, as we stated in our letter brief to you, left open a very important question. And footnote 5 on page 529 of the opinion, and that is whether or not particular communications that are necessary to facilitate a foreclosure constitute the collection of a debt for FDCPA purposes. As we noted, and as this Court in the arguments given by our adversary noted, courts are split on this. The majority of the district courts, not only in the District of Texas, District Courts in Texas, but all across the country, have held that communications to facilitate foreclosures of liens or other security interest are not the collection of a debt. The circuit courts have split. You've got the Ninth Circuit in the Hoh case holding directly that they are not subject to the FDCPA, these communications necessary to start a foreclosure. You've also got the Tenth Circuit not specifically holding that, but indicating in one of its cases that it probably doesn't apply. You've also got the Eleventh Circuit, which seems to have an inter-circuit split on whether it applies or not. In the Warren case, they specifically held that these communications do not constitute debt collection, whereas — Why isn't — I'm not sure from skimming the cases that there is a split. It's just a factual inquiry looking at the particular case. Which is — And so it would look like Judge Kaczynski's decision for the Ninth Circuit would be perfectly consistent with concluding that this October 8 letter is seeking to collect the debt because it makes a specific demand, gives a specific amount, tells them who they need to send it to. Which your — None of that was in the Ninth Circuit situation. I understand what the — but what was in the Ninth Circuit situation in Hoh was the alleged debt collector, in that case Recon Trust, sent a notice of default and a notice of the right to cure default. In order to foreclose a condominium assessment lien in Texas, you have to follow the dictates of Chapter 51 of the Texas Property Code. Chapter or Section 51.002D of the Texas Property Code requires that prior to foreclosure, as a prerequisite to foreclosing, you have to send the debtor a notice of default and advise them that they have at least 20 days to cure that default. It would be a curious result indeed if it would be a violation of the FDCPA to send out a letter which is required by Texas statute to foreclose that says, you've defaulted, you've got 20 days to cure, in our letter it was 30 days, and here's how you cure. I submit to the court that it would be far more confusing to the average consumer, or in this case the least sophisticated consumer, to simply send a letter that says you're in default, you owe the condominium association some amount of money, but we're not going to tell you what, and you have 20 days to cure it, but we're not going to tell you how to cure it. So we think our facts are much more like Ho's, where we, the firm, the attorneys, were simply sending out the letter that is required, the notice that is required by 51.00D in order to foreclose. Without sending the letter, there is no question under Texas law that the association could not foreclose on its lien. So we think our facts are much more akin to those in Ho than in the other cases that have split on that question. In addition, you've also raised the statute of limitations issue. It is true that there is not a specific statute on the Texas books that deals with foreclosure of assessment liens. At first blush, you might think that 16.035 of the Civil Practice and Remedies Code would apply, but by its terms, its definitions, it doesn't, because it states in its definitional portion that it only applies to real estate liens, and then it goes on to describe or define what those liens are. Condominium assessment lien does not satisfy the definition of any of those. Instead, as 82.113 of the Texas Property Code makes clear, it's a continuing lien, which it has to be because the debt keeps accruing. Every month, there's a new assessment, and that lien covers assessments into the future. Now, it may be that because there's no specific statute dealing with statute of limitations dealing with foreclosure of assessment liens, that we can go back to the common law that we all learned way back in the Middle Ages when I went to law school, that no debt, no lien. And if the debt is barred, then the lien is barred. Even if we apply that, it still doesn't get the appellant where they want to be, because as the Texas Supreme Court pointed out in Wolf, where you have got a debt that is for other obligations that is payable in multiple installments or obligations, the cause of action does not accrue, and hence, limitations does not begin to run until the last installment or obligation is due. In this case, it's undisputed from looking at the transaction report that was attached to Ms. Slaughter's affidavit and appears, oddly enough, in six different portions of the record. The last installment due, the last assessment due in this case, was one month before the foreclosure took place. Obviously, well within any four-year statute of limitations. So... Did you ever argue in front of the district court that no portion of the amount you were seeking to collect was time-barred? We did not argue that to the district court. What we argued instead is that, assumed for the purposes of this summary judgment, that there is this $541 that is time-barred, that has... That's the repair amount? Just wait a minute. Let him answer this before you get into your... Even if $541 out of the... Between $2,000 and $4,000 debt was time-barred, it did not bar enforcement of the remaining portion of the debt, which is, of course, another question that this court requested. And that $541, did that correspond to the repair amount, as they described? What we did was we tracked it to what they stated in their complaint, because we were moving for summary judgment. But there's no distinction in Texas law, right? The condominium can assess minimum... It can assess a monthly fee, and it can assess other amounts as well, and there's no relevant distinction between repairs, charges for repair, and the monthly assessment vis-à-vis the accruing lien. You are quite correct, Judge. Now, let me move on then. Even if part of the debt was time-barred, do you not also argue that sending out the notice of foreclosure on that does not violate the FDCPA? That is correct, Your Honor, because we were simply notifying them of the debt that our client stated was owed, and that if it wasn't paid, again, as required by Section 51.002D of the Property Code, if it's not paid, we're going to move on to foreclosure. And let's not overlook one very important factor here. Although appellees or appellants keep referring to this as disputed debt, they never disputed the debt until they filed the lawsuit. They never came back with anything other than a letter that was eight days beyond the 30 days from receipt validation portion requesting us to send them the notice of the breakdown, validate the debt, which we did on the same day, and then no communications whatsoever after that, no dispute, no communication whatsoever saying we dispute this portion of the debt, we think this is time-barred, whatever. None of that ever happened until they filed this lawsuit. So I want to make sure that everybody's clear there's no dispute that the appellees or appellant never did dispute this debt prior to filing the lawsuit. Had they done so, I think we'd be in a much different posture. Let me ask you one other quick question here because I, as a Texas member of the panel, I was intrigued by this limitations and debt collection question. And are you basically in agreement that there is no specific statute of limitations governing this, the accrual or the timeliness required for debt condo association fees? For foreclosure of that, there is no statute of limitations on the books. Right. A lawsuit would be under the four years. Yes. A lawsuit was, but the 16.03, i.e., the no debt, no lien, deals with lawsuits. Filing of a lawsuit is barred after four years. And I would also point out in that regard, as the Court probably well knows, Judge Jones, that under Texas law, a lien or, excuse me, a debt that may be unenforceable by lawsuit because of four-year statute of limitations is not extinguished. Right. It is simply unenforceable in a court, and then only if the defendant, the debtor, files the affirmative defense of statute of limitations. And if the debtor doesn't, then you can collect on that, otherwise time barred debt. But you're right. To answer your question, that statute says nothing about foreclosure. All right. Thank you, Your Honors. Ms. Eisler. It's not your turn yet. It's not your turn yet. Oh, I'm sorry. I'm small, but I'm coming. Good morning. Hello. My name is Valerie Eisler. I'm here on behalf of the Association and the management company this morning. I'm not sure that I have much that I can add to what Mr. Van Fleet has already said, but I do have a couple of points that I wanted to make. Well, don't feel obliged to use the whole lot of time. Okay. Okay. As I was getting ready for the oral argument, you know, when you're working on an appeal and you're doing your brief and there are a lot of topics, sometimes you just focus on all these topics and you kind of miss the small details. And something that occurred to me, the argument that Section 202.06 of the Property Code invalidated the declaration of dedicatory instruments that were not filed. There was one about the late fees where the board voted to raise the late fee from $5 to $25. That was not filed until 2014. The argument has been made by the Mimouds that wasn't filed, you know, by January, I think it was January 1st, 2012. So that action is void. Well, that didn't quite bring true with me when I went back and started thinking about this again. And so I decided to go back and look and see if there was any sort of legislative note or history regarding that statutory provision because the statute itself isn't really clear whether it's retroactive. But it didn't make sense that you could go back and do something that was filed 10 years ago and, you know, invalidate it. And so I did go back and I found a note in the sessions. It's in Westlaw. It's Vernon's Texas Session Law Service, 2011, Chapter 1142, House Bill 1821. And the note to Section 202.006 says, Section 2002.006, Property Code, as amended by this Act, applies to a provision in a dedicatory instrument or a restrictive covenant enacted before, on, or after the effective date of this Act, which was January 1st, 2012, except that any action taken before the effective date of this Act based on an unfiled dedicatory instrument is not invalidated by Section 202.006, Property Code, as amended by this Act. And so that goes to their argument that, well, you know, you didn't file it January 12th. You didn't file it until 2014. And therefore, raising the late fee from $5 to $25 was a void Act. And so I just wanted to bring that to your attention. All righty. Another issue in this case that I'm not sure was clear in the briefing, although I tried to make it very clear, has to do with the evidentiary objection regarding Ms. Slaughter's affidavit. And the trial court, in a footnote and in the opinion, said, I believe in the footnote is where he said it. It may have been elsewhere in the opinion, that basically the same affidavit was filed, that the Mahmouds did not object to that when it was filed in response to their summary judgment motions. Then later on, when the defendants filed their summary judgment motions, additional objections were raised. As for the association and the management company, the exact same affidavit was filed. There wasn't a change in date. They physically took the same affidavit, copied it, and attached it to the order. So that was just a point I wanted to bring up. It was exactly the same thing, as the court noted. Did the court have an oral hearing on the summary judgment motion? Yes, there was an oral hearing. And, in fact, the transcript is in the record. I should know that. They also, I was not involved in the trial court level, but I do know that they had a telephonic hearing prior to that, and then I think as a result of things that went on during the telephonic hearing, the judge decided to set it for oral hearing, and there was actually a formal hearing. Let me ask a question. Something that did come up had to do with whether the law firm could be liable to verify the exact amount of the debt, that is to say whether part of it was allegedly time-barred or not. Are you familiar with the Fair Debt Collection Practices Act? I'm not terribly familiar with it because it's not an area in which I practice. Okay. Were you involved in communicating the amount due to the, you know, Ms. Slaughter's law firm? Our firm or me personally? Right. No. Okay. That just went from the Condo Owners Association to the collection firm. My understanding is it was from the management company that they sent that information. Okay. Just wanted to get that down. And as I'm looking over my notes, I believe that's all I have unless you have some additional questions. I guess not. All right. Thank you. Thank you. It's your turn. Thank you. Mr. Jacob. Is it Jacob or Jacob? My first question. There are a lot of FDCPA cases that deal with threats of litigation on a time-barred debt, and I was astonished to find no FDCPA cases related to threats of foreclosure on a time-barred debt, not one way or the other. And I've been practicing in this area for a long time. It's just the issue never came up in the way that it has in this case. Well, but threats to collect on time-barred debt, as long as they don't threaten litigation, have almost uniformly been held not to violate, right? Threats to collect without threats of litigation. Right. I believe that's correct. I didn't look at that issue specifically, but I believe that is correct. So what about threats of foreclosure, of a nonjudicial foreclosure? Well, if we look at the rationale for why threats of litigation on time-barred debt are a violation of the FDCPA, the Seventh Circuit in a 2013 case says, FDCPA outlaws stale suits to collect consumer debts as unfair because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against the lawsuit. They therefore unwittingly acquiesce to such lawsuits. The passage of time dulls the consumer's memory of circumstances and validity of the debt. The delay ensuing after a limitations period heightens the probability that the debtor will no longer have personal records. Those reasons for holding that the FDCPA is violated for a threat of litigation apply equally, if not with more force, than with a threat of foreclosure. With a threat of nonjudicial foreclosure, you don't even have the opportunity to plead limitations, to adjust the debt to what. Well, of course you do. That's why the law requires you to give the lender or whoever it is to give 20 or 30 days' notice. In that sense, where you could file a lawsuit, yes, that's what you could do. No, you go in and you can try to enjoin the foreclosure. By filing a lawsuit. Right. Yeah, so the consumer would be forced to do that. Or at least object, at least do something. Well, you know, that brings me to one of Mr. Van Fleet's arguments, that there were no objections to these debts, no disputes. The burden was on the association to give the owners notice that these debts would be added to the lien, and that they would have an opportunity to make that dispute. So our summary judgment evidence showed that they never gave that notice. So we never had the opportunity to dispute those debts. And I'm talking specifically about the repair debts in that case. Well, there were, I mean, they were getting a bill every month, weren't they? I mean, somewhere in the record I saw an itemization of the monthly fees or charges, whatever they were, for a number of years versus the occasional payments. They didn't get a bill every month. They got occasional, although there were a lot of them over the years because it goes back to 2006, the records that we have, but they didn't get a bill every month. They got occasional demand letters, sometimes providing the detail, and then the lengthy detail only came about during this last phase, the foreclosure phase. Yeah, but when they bought the condo, they signed up for it. They knew they had to pay a monthly fee, right? Oh, of course. And that's all I'm saying. They would have gotten some notice about their monthly fees. Correct. Yeah. In August of 2012, when the management company sent the last communication that it did, its demand letter, demanding payment for about $1,600, if you subtract out the disputed amounts, the owners in this case, Jackson and Mahmoud, actually were ahead of the game. They had a $75 credit. Now, of course, that assumes that we would prevail on disputing all of the amounts, but that is the kickoff for the attorney defendants coming into this and beginning their process. Ms. Eisler, it looks like I'm about out of time. Go ahead. Ms. Eisler mentioned Section 202.06 of the property code involving the filing of dedicatory instruments in the real property records. And it has two provisions. One provision says that you have to file your dedicatory instruments in the real property records. The second provision, effective January 1, 2012, says if you don't file it, then it's void. Ms. Eisler pointed out that in the comments or notes in the legislative history, it was not intended to be retroactive. It's not intended by this provision to be retroactive. It does not by itself invalidate anything that wouldn't otherwise be invalidated. But the requirement to file has always been there. Well, it's been filed. I mean, we had a recorded copy in the record. It wasn't filed until 2014. It wasn't filed until two years, almost two years after this lawsuit was filed. No, I'm sorry, until six months after the lawsuit was filed in the summer of 2013. Well, just, you know, because why don't you just tell us to which of your causes of action that theory applies? So you're claiming there's no debt due at all because the thing wasn't recorded or what? No, no. It applies in particular to the board's increase of the late fees from $5 to $25. Oh, okay. All right. When they took that action, that was required to be recorded, both under the declaration and under the statute as of 2012. And which of your, okay. All right. All right. All right. Thank you. Thank you very much. Thank you all for coming over here. Thank you very much.